IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
APR 5 2002
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| JEFF KIST, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: CV-02-PT-0293-M |
| PROGRESSIVE SPECIALTY INSURANCE COMPANY, et al., | ) |
| Defendants. | ) |

ENTERED
APR 5 2002

## MEMORANDUM OPINION

This cause comes to be heard on plaintiff Jeff Kist's Motion to Remand and for Costs and Expenses filed on February 22, 2002.

### FACTS AND PROCEDURAL HISTORY

On October 16, 2001, plaintiff Jeff Kist ("Kist") filed a civil action against Progressive Casualty Insurance Company ("PCIC") in the Circuit Court of Marshall County, Alabama.[1] In the lawsuit, with class action allegations, Kist alleged that the "total aggregate amount of damages sought . . . is less than $74,999.00 per class member." The lawsuit was based on the "Additional Payments" provision in the automobile policy sold by Progressive to Kist and other Alabama residents. That provisions reads as follows: "In addition to **our** Limit of Liability, **we** will pay for an **insured person**: 5. reasonable expenses, including loss of earnings up to $50 a day, incurred at **our** request." According to Kist, he never received the additional payment for his reasonable expenses he incurred when he was required to meet with Progressive's defense attorney to prepare for a deposition in a lawsuit in which Kist was the named defendant.[2]

---

[1] Kist also named Fictitious Defendants A through F as parties to the action.

[2] It is not clear whether he ever requested such payment.

1

Along with the claim for compensatory damages, Kist asserted a claim for injunctive relief. The injunctive relief sought in the complaint was a requirement that Progressive "notify all policyholders who are defendants in a covered lawsuit of this ['additional payments'] provision of the policy and provide insured's [sic] claim forms to submit a claim under this provision."[3]

On October 19, 2001, PCIC was served with a copy of the summons and complaint. On November 21, 2001, PCIC filed an answer to Kist's complaint in the Circuit Court of Marshall County, Alabama. On the same day, it served a request for admission on Kist. PCIC requested that Kist admit or deny that the value of the injunctive relief sought in the complaint per class member is less than $1.00. In response to this request, Kist directed PCIC to review the allegations in the complaint. On January 14, 2002, Kist amended his complaint to substitute Progressive *Specialty* Insurance Company in place of Progressive *Casualty* Insurance Company.[4] On February 4, 2002, defendant Progressive Specialty Insurance Company ("PSIC") filed a Notice of Removal in this court pursuant to 28 U.S.C. § 1441(a). PSIC contends that this court has subject-matter jurisdiction under the diversity jurisdiction statute, 28 U.S.C. § 1332.

## ARGUMENTS

Kist makes two main arguments in support of his motion. First, he argues that this court lacks subject-matter jurisdiction because PSIC has failed to satisfy its burden of demonstrating that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Relying on

---

[3] Presumably policy holders have copies of the policies. Does the law require separate notice of all policy provisions.

[4] In his amendment to the state law complaint, Kist acknowledged that Progressive Specialty Insurance Company was incorrectly named in the original complaint as Progressive Casualty Insurance Company.

*Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001), Kist states that the Eleventh Circuit has held that a "conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden." Kist notes that the "additional payments" provision would likely require reimbursements from PSIC to its policyholders in the range of $100 to $150 per day. He claims that PSIC cannot demonstrate that he or any other Alabama insured could recover anywhere near $75,000.00 in compensatory damages. Although he capped his recovery of compensatory damages at $74,999.00, Kist claims that this self-imposed cap does not equate to an admission that the true "amount in controversy" as to compensatory damages is a figure around $74,999.00.[5] In summation of his position, Kist claims that PSIC cannot utilize this self-imposed ceiling as the true amount in controversy because he could not realistically expect to recover more than $10,000.00 in compensatory damages.[6]

Second, Kist argues that this civil action should be remanded because PSIC failed to remove the action within thirty days of receiving the initial pleading. Kist contends that PSIC argument that notice was timely filed because it could not determine whether the matter was removable until he responded to the request for admission is without merit. In support of this contention, Kist asserts that he stated in his complaint the specific policy provision and benefits

---

[5] This court agrees.

[6] Kist also relies on *Lindsay v. American General Life & Accident Insurance, Co.*, 133 F. Supp. 2d 1271 (N.D. Ala. 2001). According to Kist, the plaintiff in *Lindsay* expressly stated that he made no claim for compensatory and punitive damages in excess of $74,000.00. After defendant removed the action, the court remanded because the defendant failed to show to a legal certainty that, if Lindsay prevailed on the liability issue, an award of $75,000 or less would be "outside the range of permissible awards." 133 F. Supp. 2d at 1274. Like the defendant in *Lindsay*, Kist claims that PSIC has failed to create a viable issue as to whether Kist's damages are anywhere near $75,000.00.

3

to which an insured was entitled. He claims that PSIC could have reviewed the information in its possession and presented to this court an assessment of the potential monetary value of an individual insured's claim. He argues that this assessment could have been made without seeking information from him. As for the requests for admission, Kist notes that he directed PSIC to see the complaint. He states that PSIC references Count One of the complaint in its Notice of Removal. Thus, Kist contends that PSIC's evaluation of the value of the injunctive relief claim is based on its reading of the complaint. Consequently, Kist argues that the action was untimely removed because PSIC could have filed its Notice of Removal within thirty days of receiving the complaint.

Finally, Kist requests an award of costs and expenses. Kist argues that this court should exercise its discretion and make this award for two reasons. First, counsel for Kist state that they have filed five complaints, with class action allegations, in other Alabama counties against other insurers involving similar "additional payments" provisions. According to counsel for Kist, the defendant insurers in these cases have not filed notices of removal.[7] Second, Kist argues that a reasonable reading of the complaint, investigation of the policy, and assessment of monetary recovery should have revealed to PSIC that the jurisdictional threshold amount could never be satisfied. *See Garbie v. Daimler Chrysler Corp.*, 211 F.3d 407 (7th Cir. 2000) (awarding costs and expenses where "removal was unjustified under settled law"; claims involved allegations of cars sold for under $75,000 not being painted properly).

In response, PSIC notes that Kist asserts claims for deceit, suppression, breach of contract and unjust enrichment and seeks up to $74,999.00 in damages. It also notes that Kist

---

[7] Kist's counsel claims that these insurers "realized that the total value of any single insured's claim against it would never come close to $75,000.00."

seeks injunctive relief but that the complaint does not specify a dollar value for the injunctive relief. Since Kist has not pled a specific dollar amount, PSIC argues that it does not have to prove that the plaintiff is likely to recover more than the amount in controversy. Instead, it "must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Williams*, 269 F.3d at 1319. PSIC claims that it has met this burden for the following reasons.

First, it argues that the amount of the claim for injunctive relief was not clear when it initially received the complaint. It requested that Kist admit or deny that the value of the injunctive relief was less than one dollar. Kist referred PSIC to the complaint. According to PSIC, the complaint simply states that the policy requires PSIC to pay up to $50.00 per day for reasonable expenses associated with a lawsuit. Thus, PSIC added the $50.00 amount to the claim for $74,999.00 and removed the case based on the amount in controversy.

Second, PSIC contends that Kist's specific allegations concerning damages in the complaint must be given considerable weight in determining the amount in controversy. PSIC argues that if Kist did not believe he was entitled to recover $74,999.00, he would not have specifically requested that amount of damages in the complaint. PSIC finds it interesting that Kist did not limited his damages in the motion to remand to an amount lower than what he expressly claimed in the complaint. Furthermore, PSIC notes that Kist has failed to mention that he asserts claims for intentional fraud and deceit.[8] According to PSIC, these are claims for which punitive damages may be recoverable under Alabama law. PSIC claims that the United States Supreme Court and the Eleventh Circuit have held that where punitive damages are

---

[8] Kist's complaint alleges that PSIC "intentionally, maliciously, willfully, recklessly, consciously, deliberately, oppressively, fraudulently and/or wantonly" misrepresented facts.

recoverable for the claims alleged, such damages must be considered in determining the amount in controversy.[9] *See Bell v. Preferred Life Assurance Soc.*, 320 U.S. 238, 240 (1943); *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987). Since punitive damage claims must be considered, PSIC notes that damages in Alabama fraud cases frequently exceed $75,000.00.[10]

Responding to the timeliness of removal argument, PSIC contends that this action was timely removed for two reasons. First, PSIC asserts that it removed the action within thirty days of it becoming a party to this lawsuit. In support of this proposition, PSIC states that Kist amended his complaint to substitute it as the proper defendant on January 14, 2002. Based on this action, PSIC claims that it timely filed the notice of removal on February 4, 2002. PSIC claims that the Supreme Court's decision in *Murphy Brothers v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999), is controlling on this issue. According to PSIC, the issue before the Supreme Court in *Murphy* was "whether the named defendant must be officially summoned to appear in the action before time to remove begins to run. Or, may the 30-day period start earlier, on the named defendant's receipt, before service of official process, of a 'courtesy copy' of the filed complaint faxed by counsel for the plaintiff." *Id.* at 347. PSIC states that the Supreme

---

[9] PSIC asserts that Kist has not disclaimed punitive damages in this case. Additionally, it contends that the fact that Kist's complaint does not expressly seek punitive damages is insignificant. Because Kist has pled fraud and other claims which provide the basis for punitive damages, PSIC argues that such damages must be considered in determining the amount in controversy. *Relying on Guillen v. Kuyhendall*, 470 F.2d 745, 748 (5th Cir. 1972).

[10] *See, e.g., Liberty Nat'l Life Ins. Co. v. Caddell*, 701 So. 2d 1132 (Ala. 1997) (affirming Bullock County jury verdict of $50,000 compensatory and $100,000 punitive damages in both fraud and breach of contract case); *Liberty Nat'l Life Ins. Co. v. McAllister*, 675 So. 2d 1292 (Ala. 1995) (affirming jury award of $1,000 in compensatory and $1 million in punitive damages); *Indep. Life & Accident Ins. Co. v. Harrington*, 658 So. 2d 892 (Ala. 1994) ($4 million punitive damage award where plaintiff suffered actual damages of $1,200); *Foster v. Life Ins. Co.*, 656 So. 2d 333 (Ala. 1994) (actual damages of $2,500 and punitive damages of $1 million); *Prudential Property & Cas. Ins. Co. v. Haygood*, 599 So. 2d 618 (Ala. 1992) (affirming $117,000 jury verdict in bad faith, misrepresentation and breach of contract case).

Court held that the thirty day removal period does not begin to run until a party is formally brought into the case. Consequently, it claims that the thirty day period did not begin to run until January 4, 2002, after it was substituted as the proper defendant.

Second, it argues that removal was timely even if the substitution had no impact on the thirty day removal period. PSIC asserts that the thirty day period did not begin to run until it received Kist's response to its request for admission. It contends that because Kist did not give a straight answer to the request for admission, which was an attempt to clarify an unclear complaint, the case became removable when it received the response.

In reply, Kist argues that PSIC has proffered no evidence to support its conclusory "damages" calculation and, therefore, has failed to meet its burden on removal. *Relying on Lindsay v. American General Life & Accidental Ins. Co.*, 133 F. Supp. 2d 1271 (N.D. Ala. 2001). Kist contends that PSIC has presented no facts to demonstrate that an insured could realistically expect to recover anywhere near $74,999.00 in damages.[11] Furthermore, Kist argues that the punitive damage cases cited by PSIC are not relevant to the issue of determining the amount in controversy in this case because the five cases were not brought in Marshall County and none involved factual scenarios similar to the present lawsuit.[12]

Finally, Kist concedes that a strict reading of *Murphy* might require a determination that the subject notice of removal was timely filed. However, Kist argues that *Murphy* is

---

[11] Essentially, Kist argues that the $74,999.00 figure is not "controlling" regardless of true facts. As an example, Kist states that if this court realized a plaintiff had significantly overstated the value of his claim it could dismiss the lawsuit for lack of federal subject-matter jurisdiction *sua sponte*.

[12] Kist concedes that PSIC could rely on the results of similar lawsuits. However, he contends that PSIC must cite prior lawsuits in the relevant county, involving similar underlying events and claims, and decided under similar legal principles. *See Lowe's Ok'd Used Cars, Inc. v Acceptance Ins. Co.*, 995 F. Supp. 1388 (M.D. Ala. 1998).

7

distinguishable from the facts of this case. Kist states that PCIC was originally named as the defendant in the summons and complaint. He notes that PCIC was served with a copy of the summons and complaint on October 19, 2001, and it filed an answer on November 21, 2001. Kist contends that PCIC made no indication in the answer that it was not the correct party. He also notes that PCIC filed the request for admission upon which the present defendant, PSIC, relies in endeavoring to satisfy the amount in controversy. He claims that PCIC and PSIC are sister companies that share a common principal place of business and are represented by the same attorneys. Kist argues that PSIC implicitly engaged in this litigation prior to his filing the amendment to the complaint and, thus, PSIC came under the state court's authority. Consequently, Kist claims that the thirty day period for removal expired thirty days after PCIC was served with a copy of the summons and complaint.

## MOTION TO REMAND STANDARD

Federal courts are courts of limited jurisdiction. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (1994). Therefore, federal courts only have power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The limited nature of federal court jurisdiction has caused the Eleventh Circuit to favor remand of removed cases where federal jurisdiction is not absolutely clear. *Burns*, 31 F.3d at 1095. The removal statute is to be construed narrowly with doubt construed against removal. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941).

A case may be removed from state to federal court only if the case could have been brought originally in federal court. *See* 28 U.S.C. § 1441(a). The burden of establishing federal jurisdiction is placed on the removing party with all doubts resolved in favor of remand. *See*

*Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). A state court action may be removed to federal court based upon diversity or federal question jurisdiction. *See* 28 U.S.C. § 1441(a), (b).

## CONCLUSIONS OF THE COURT

The court concludes that the defendant has not proffered evidence sufficient to establish even by a preponderance of the evidence that any class member is likely to be awarded more than $75,000.00 in damages of any type. For this reason, the action will be REMANDED. The court does not reach the timeliness of removal issue which is, at least, questionable.[13]

During an oral argument this judge referred to "game playing" by both sides. This judge does not suggest an impropriety by either side. The established law not only allows for game playing, it encourages it. All the law is, effectively, judge made. Game playing could be eliminated if plaintiffs, who are in the best position to state the amount in controversy, would be required to fish or cut bait with regard to potential claims. Potential claims should be deemed to be the amount in controversy. Until this reason is brought to the process, this court is bound by what it perceives to be unreasonable law.

This _5th_ day of April 2002.

ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[13] *See Iulianelli v. Lionel, L.L.C.*, 183 F. Supp. 2d 962, 966 (E.D. Mich. 2002) and cases cited therein. Apparently no court has followed *Bussey v. Seaboard*, 319 F. Supp. 281 (S.D. Ga. 1970). Two of the cases otherwise cited have distinguished it.